# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESSIE IRENE WALTZ,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　　　Defendants. | 1:06-cv-1831-SMS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DOC. 17)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (Doc. 23)<br><br>ORDER GRANTING REQUESTS FOR JUDICIAL NOTICE (DOCS. 25, 33)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301. Pending before the Court are Defendants' motion to dismiss the action, or, in the alternative, for summary judgment, and Plaintiff's motion to amend the complaint.

The motions came on regularly for hearing on January 11, 2008, at 9:34 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Ernest Robert Wright of the United States Attorney's Office appeared on behalf of

1 Defendants; Warren R. Paboojian and Jason Bell appeared on behalf
2 of Plaintiff. After argument the matter was submitted to the
3 Court.

4    I. Background

5    In this action for damages suffered by Plaintiff Bessie
6 Irene Waltz from physical injuries allegedly caused by the
7 negligent conduct of an employee of Defendants United States
8 Department of Agriculture (USDA), United States Forest Service
9 (USFS), and United States of America (USA), Defendants move
10 pursuant to Fed. R. Civ. P. 12(h)(3) for dismissal of Plaintiff's
11 complaint, or for summary judgment in the alternative. Defendants
12 filed a notice of motion, memorandum of points and authorities,
13 and exhibits on October 25, 2007. Opposition was filed on
14 November 21, 2007, including a memorandum, reply or response to
15 Defendant's statement of undisputed facts, request for judicial
16 notice, appendix of authorities, and declarations of Warren R.
17 Paboojian and Jason Bell. Defendants replied on December 26,
18 2007, with the filing of a memorandum and declarations of Kristi
19 Kapetan and Cindi Boukidis, as well as objections to the
20 declaration of Bell. Plaintiff filed objections to the
21 declarations of Kapetan and Boukidis on January 3, 2008, and she
22 also filed declarations of Paboojian and Bell in opposition to
23 the motion. Defendants filed on January 8, 2008, a declaration of
24 Cindi Boukidis in reply to Bell's final declaration.

25    Plaintiff also moves for leave to file an amended complaint.
26 The motion was filed on November 21, 2007, along with a
27 memorandum, request for judicial notice, appendix, and
28 declarations of Warren R. Paboojian and Jason Bell; opposition

2

1 was filed on December 26, 2007, including an attachment of

2 unpublished cases; and Plaintiff replied on January 3, 2008, with

3 a memorandum, supplemental declarations of Paboojian and Bell in

4 support of the motion, and an appendix.

5     II. <u>Requests for Judicial Notice</u>

6     Both parties have submitted requests for judicial notice of

7 various documents filed in the instant action. (Defendants, Doc.

8 25; Plaintiff, Doc. 33). The Court may take judicial notice of

9 court records. Fed. R. Evid. 201(b); <u>United States v. Bernal-</u>

10 <u>Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise Cascade</u>

11 <u>Corp.</u>, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d

12 699 (9th Cir. 1981).

13     Accordingly, the requests will be granted.

14     III. <u>Procedural Issues</u>

15     The Court OVERRULES Plaintiff's objections (Docs. 50, 51) to

16 the Court's considering the declarations or any new facts

17 submitted or sought to be established by Defendants in their

18 reply papers. Plaintiff relies on Local Rule 78-230(a), which

19 states that the moving party shall file copies of all documentary

20 evidence that the party intends to submit in support of the

21 motion.[1] Plaintiff also argues that it is inappropriate to

22 consider arguments made for the first time in a reply. <u>See</u>,

23 <u>United States v. Boyce</u>, 148 F.Supp.2d 1069, 1085 (S.D.Cal. 2001);

24 <u>United States ex rel. Giles v. Sardie</u>, 191 F.Supp.2d 1117, 1127

25 (S.D.Cal 2000). However, here it was not until Plaintiff raised

26

27      [1] Plaintiff also cites Local Rule 56-260 concerning citing specific evidence in support of material facts in a

28 motion for summary judgment and filing with the Clerk all evidentiary documents cited in the moving papers. However, the Court is proceeding pursuant to Fed. R. Civ. P. 12(b) and not Rule 56.

1  equitable tolling and waiver of the statute of limitations in the

2  response to the motion that the additional facts became

3  pertinent; given the nature of the factual controversy before the

4  Court, it does not appear that the government necessarily would

5  have anticipated Plaintiff's response to the motion.

6      Further, the Court notes that in addition to the objections

7  submitted by Plaintiff, Plaintiff submitted additional

8  declarations in opposition to the motion to dismiss after the

9  reply was filed by the government, and the government has

10  submitted yet another declaration in response to these

11  declarations. There is no express provision for such objections

12  or additional factual submissions at such a point in the motion

13  process.

14      However, even if Defendant were to object to the procedure,

15  the Court determines that it is fair and efficient to permit

16  Plaintiff as well as Defendant to have an opportunity to submit

17  evidentiary material in response to the issues that have arisen

18  during the course of the motion process. Both parties have had

19  such an opportunity.

20      In summary, the Court considers the parties' efforts to

21  submit evidentiary documents to be appropriate and timely in view

22  of the nature of the dispute before it, and it exercises its

23  considerable discretion with respect to enforcement of the

24  pertinent rules to overrule Plaintiff's objections and to decline

25  Plaintiff's request to strike the new matter. See, Dulange v.

26  Dutro Construction, Inc., 183 F.3d 916, 919 n. 2 (9th Cir. 1999).

27      IV. Motion to Dismiss for Lack of Jurisdiction

28      Defendants argue that the Court lacks subject matter

4

1  jurisdiction because Plaintiff failed to exhaust her

2  administrative remedies as required by the Federal Tort Claims

3  Act prior to filing suit.

4      Fed. R. Civ. P. 12(h) states:

5      3) **Lack of Subject-Matter Jurisdiction**. If the court
       determines at any time that it lacks subject-matter
6      jurisdiction, the court must dismiss the action.

7  Defendants are necessarily moving pursuant to Fed. R. Civ. P.

8  12(b)(1), which states that the defense of lack of subject-matter

9  jurisdiction may be asserted by motion.

10     The presence or absence of subject matter jurisdiction of a

11 federal court is a question of law. McCarthy v. United States,

12 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489 U.S. 1052

13 (1989). Except in removed cases, it is in effect presumed that

14 the Court lacks jurisdiction, and it is the plaintiff who bears

15 the burden of proof of establishing subject matter jurisdiction.

16 Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377

17 (1994); Stock West, Inc. v. Confederated Tribes of the Colville

18 Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989); Valdez v. United

19 States 837 F.Supp. 1065, 1067 (E.D.Cal. 1993), aff'd., Valdez v.

20 United States, 56 F.3d 1177 (9th Cir. 1995).

21     Challenges to jurisdiction by way of Rule 12(b)(1) may

22 proceed on the basis of the face of the complaint, or on the

23 basis of evidence beyond the complaint. When proceeding on the

24 basis of the face of the complaint, the Court must accept all of

25 the factual allegations of the complaint as true and ask whether

26 the allegations state a claim sufficient to survive a motion to

27 dismiss. United States v. Gaubert, 499 U.S. 315, 327 (1991);

28 Berkovitz v.United States, 486 U.S. 531, 540 (1988).

1    However, when considering a motion to dismiss pursuant to
2  Rule 12(b)(1), the district court is not restricted to the face
3  of the pleadings, but may review any evidence, such as affidavits
4  and testimony, and may weigh the evidence and resolve and
5  determine factual disputes concerning the existence of
6  jurisdiction; this consideration of evidence does not convert the
7  motion into a motion for summary judgment. McCarthy v. United
8  States, 850 F.2d 558, 560 (9th Cir. 1988). Under such
9  circumstances, no presumptive truthfulness attaches to the
10 plaintiff's allegations. Roberts v. Corrothers, 812 F.2d 1173,
11 1177 (9th Cir. 1987).

12    Nevertheless, where the facts upon which jurisdiction
13 depends are also an essential element of the federal claim, the
14 challenge to the facts goes both to federal jurisdiction (which
15 is otherwise always a question of law for the Court) and to the
16 merits of the claim. The Court should not resolve genuinely
17 disputed facts where the question of jurisdiction is dependent on
18 the resolution of factual issues going to the merits. Roberts v.
19 Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). In such a case,
20 the district court assumes the truth of factual allegations in a
21 complaint unless controverted by undisputed facts in the record.
22 Dismissal is then appropriate where it appears beyond doubt that
23 the plaintiff can prove no set of facts in support of his claim
24 which would entitle him to relief. Id.

25    Here, the facts upon which jurisdiction depends do not
26 relate to the merits of the claim, but rather relate to the
27 conduct of the parties and their counsel after the incident which
28 forms the basis of the complaint. The merits of the action

involve the question of whether or not negligent conduct of the
Defendants with respect to the collision of the government truck
with Plaintiff's vehicle caused injury to Plaintiff; the question
of jurisdiction concerns the actions of Plaintiff's counsel in
filing various documents and the conduct of the government's
counsel and agents in dealing with Plaintiff's counsel. Thus, the
Court will proceed to resolve and determine the disputed facts
pertinent to the issue of subject-matter jurisdiction.

     V. <u>Exhaustion of Administrative Remedies under the
Federal Tort Claims Act</u>

    Title 28 U.S.C. § 2401(b) states that a tort claim against
the United States shall be forever barred unless it is presented
in writing to the appropriate federal agency within two years
after such claim accrues, or unless an action is begun within six
months after the date of mailing, by certified or registered
mail, of notice of final denial of the claim by the agency to
which it was presented.

    It is established that an action brought by one who fails to
exhaust his administrative remedy by making written a claim
against the government in compliance with 28 U.S.C. § 2401(b)
fails for lack of jurisdiction. Title 28 U.S.C. § 2675(a) states
that a Federal Tort Claims Act (FTCA) action "shall not be
instituted" against the United States for money damages for
injury or loss of property or personal injury or death unless the
claimant first presents his claim to the "appropriate Federal
agency," and the claim is finally denied in writing and sent by
certified or registered mail. Section 2675(a) further provides
that the failure of an agency to make final disposition of a

1  claim within six months after it is filed shall, at the option of
2  the claimant any time thereafter, be deemed a final denial of the
3  claim for purposes of this section. The claim requirement of §
4  2675(a) is a jurisdictional limitation. <u>McNeil v. United States</u>,
5  508 U.S. 106, 112 (1993); <u>Blain v. United States</u>, 552 F.2d 289,
6  291 (9th Cir. 1977).

7       Here, it is undisputed for purposes of this motion that on
8  May 20, 2006, a USFS employee was acting in the scope of the
9  government employment and was driving a government-owned truck
10 that collided with Plaintiff's motorcycle, which resulted in
11 permanent injuries to Plaintiff. Plaintiff's attorneys mailed an
12 administrative tort claim to the USFS on June 22, 2006; the claim
13 was dated June 21, 2006. The agency received the claim four days
14 later on June 26, 2006. Plaintiff initiated the present action by
15 filing it in this Court on December 18, 2006. On February 13,
16 2007, the Forest Service sent by certified mail a letter
17 notifying Plaintiff and her attorney of the final denial of the
18 Plaintiff's administrative tort claim. Plaintiff did not file any
19 complaint against the United States during the six months
20 immediately following the denial of her administrative tort
21 claim, a time period ending on or about August 11, 2007. (Defts.'
22 Undisputed Facts & Plaintiff's Response thereto, items 1 through
23 6, 8-9, 12.)[2]

24      Pursuant to 28 C.F.R. § 14.2(a), a claim is deemed to have
25 been presented when a federal agency receives from the claimant

26 _____

27      [2]The Court notes that Plaintiff did file another complaint in this Court in a separate action on November 20, 2007 (<u>Waltz v. United States of America Department of Agriculture et al.</u>, 1:07-cv-01691-LJO-GSA). Subsequently, the two cases were related, the undersigned Magistrate Judge was assigned to the new case, and the parties consented
28 to the jurisdiction of the Magistrate Judge for all purposes in the separate action (now 1:07-cv-01691-SMS).

written notification of an incident accompanied by a claim for
money damages in a sum certain for death, personal injury, or
loss or injury to property. Here, the claim was presented on June
26, 2006. The lawsuit was filed before the passage of six months
after the presentation of the claim and thus before the claim was
deemed denied by the passage of time pursuant to § 2675(a).
Further, the lawsuit was filed before the claim was actually
denied in February 2007. No additional action was filed
thereafter during the six-month period after denial of the claim.

Accordingly, with respect to the showing that Defendants
made in their initial moving papers, it is concluded that
Defendants have shown their entitlement to dismissal of this suit
for lack of subject-matter jurisdiction.

VI. <u>Equitable Tolling and Equitable Estoppel</u>

Plaintiff argues that the time period for filing a complaint
during the six months immediately following the denial of her
administrative tort claim is tolled from February 13, 2007, to at
least October 25, 2007,the date of the government's filing of the
motion to dismiss, because Plaintiff's counsel asserts that the
Assistant United States Attorney handling the case informed him
that the case was prematurely filed but that counsel need not
file another complaint. Plaintiff argues that the time period
should be equitably tolled, and the government should be
equitably estopped from asserting the lack of jurisdiction.

Further, Plaintiff argues that because Defendants did not
assert the statute of limitations defense in its answer, the
government has waived its defense, and thus, the motion should be
denied.

A. <u>Legal Standards</u>

Plaintiff has the burden of establishing that a statute of limitations that has run should be equitably tolled. <u>Cooper v. Bell</u>, 628 F.2d 1208, 1214 (9th Cir. 1980). Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period. <u>Lehman v. United States</u>, 154 F.3d 1010, 1016 (9th Cir. 1998). In this case, the government adverted to equitable tolling in a general sense only[3] in the initial moving papers. However, the government conceded that for equitable tolling to apply, a plaintiff must show that an affirmative misrepresentation or affirmative concealment of a material fact by the government somehow prevented or made impossible the filing of a timely complaint, and that the plaintiff neither knew nor reasonably should have known the material facts. <u>Irwin v. Department of Veterans Affair</u>, 498 U.S. 89, 95-96 (1990) (waiver of sovereign immunity under 42 U.S.C. § 2000e-16(c) was rebuttably presumed to be subject to equitable tolling in the absence of any congressional provision to the contrary, and the court noted that equitable tolling is permitted where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by the adversary's misconduct in allowing the filing deadline to pass, but not where the claimant failed to exercise due diligence or where the circumstances involved at best a garden variety claim of

---

[3] Defendants referred generally to the distinction between excusable neglect and the affirmative governmental misconduct required for a finding of equitable tolling; Defendants did not address specific facts that later were brought forward by Plaintiff. (Mot. pp. 9-12.)

1  excusable neglect); <u>Lehman v. United States</u>, 154 F.3d 1010, (9th

2  Cir. 1998) (where the Plaintiff filed suit before the agency

3  issued a written notice of final denial but after the time period

4  which the pertinent statute required for waiting for a denial,

5  the suit was timely; Plaintiff then dismissed it allegedly in

6  reliance on the government's promise to engage in settlement

7  negotiations, and filed a second action, which was filed beyond

8  six months after the denial of the claim; it was held that the

9  second action was time-barred and that neither equitable tolling

10 nor equitable estoppel applied). Equitable tolling is available

11 in suits against the United States absent evidence that Congress

12 intended the contrary, and it has been recognized that nothing in

13 the Federal Tort Claims Act (FTCA) indicates that Congress

14 intended for equitable tolling not to apply. <u>Alvarez-Machain v.</u>

15 <u>United States</u>, 107 F.3d 696, 701 (9th Cir. 1996). Thus, it is

16 available in appropriate circumstances.

17     Equitable tolling applies when the defendant's wrongful

18 conduct prevents the plaintiff from asserting a claim or when it

19 is impossible for the plaintiff to file on time due to

20 extraordinary circumstances beyond the control of the plaintiff.

21 <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir.

22 1996) (abduction of the plaintiff by the government sufficient).

23 In contrast, counsel's ignorance of the limitations period or its

24 application was not excusable in <u>Lehman</u>; the government's

25 lawyer's failure to explain to the plaintiff's counsel the

26 consequences of a voluntary dismissal did not amount to

27 affirmative misleading or advice about the statute of

28 limitations, and the opposing party had no duty to inform the

plaintiff of the statute of limitations. Lehman, 154 F.3d at 1016. Lehman was not a case in which the government stated that it would forego a statute of limitations defense or that the statute would be tolled. Id. at 1016.

Equitable estoppel focuses on the actions of the defendant; its elements are 1) the party to be estopped knows the facts, 2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, 3) the party invoking estoppel must be ignorant of the true facts, and 4) he or she must detrimentally rely on the former's conduct. Lehman, 154 F.3d at 1016. When a party seeks to invoke equitable estoppel against the government, an additional showing is required that the agency engaged in affirmative conduct going beyond mere negligence and that the public's interest will not suffer undue damage as a result of the application of the doctrine. Lehman, 154 F.3d at 1016-17.

In Lehman, the plaintiffs received a notice of final denial of their administrative claim which contained written advice of the six-month period of limitation; further, it involved an omission to give advice, and such an omission is insufficient to support equitable estoppel. Lehman, 154 F.3d at 1017.

Equitable estoppel would be made out where an employee in the agency told the plaintiff that he was not allowed to file a charge, and the plaintiff relied thereupon. Cooper v. Bell, 628 F.2d 1208 (9th Cir. 1980).

B. Facts

The Court proceeds pursuant to Local Rule 78-230(i) to determine the matter upon the papers submitted and the argument

at the hearing.

Plaintiff's lead counsel, Warren Paboojian, declared that he received a telephone call from Assistant United States Attorney Kristi Kapetan in which she advised Paboojian that she would be representing the United States in the action. The date of this call is not stated.

Paboojian also declared that he and Kapetan spoke with each other about the case near the end of the month of January 2007 (no date is stated) in connection with Rule 26 and the Court's order. Paboojian states that they discussed the facts of the case and substantive, liability issues.

Paboojian also refers to a "Rule 26 meeting" (Decl. ¶ 7); it appears he is speaking of the same conversation in January 2007. He informed Kapetan of Plaintiff's injuries, including loss of an eye, substantial orthopedic injuries, reconstructive facial surgery, and other surgeries; he also informed Kapetan that Plaintiff was a substantial wage earner, earning about $100,000.00 per year; and he conveyed his thoughts regarding liability of the Defendants. He and she also discussed mediation, and he informed Kapetan that he believed that Plaintiff's past medical expenses would exceed $500,000.00. No notes concerning this conversation are referred to or produced, although Paboojian attached an e-mail dated Thursday, February 1, 2007, from Bell to Kapetan, replying to Kapetan's e-mail of the same day in which she stated that it was good to talk to Bell that day, and specified the times for arranging completion of the statement and the time and date of the actual conference. (Decl., Ex. A.)

Paboojian declared that during that same conversation,

13

1  Kapetan informed him that his complaint was a few days premature
2  but told him not to worry about filing another complaint, that it
3  was no big deal, that she was not that technical, and that
4  Paboojian would not need to refile it despite its slight
5  technical prematurity. Paboojian stated in argument before the
6  Court that he did not know that the legal effect of the premature
7  filing was a defect in subject-matter jurisdiction. Paboojian
8  declared that he informed Kapetan that Jason Bell would be
9  assisting him on the upcoming joint scheduling conference;
10 Kapetan said she would prepare a rough draft of the joint
11 scheduling conference statement; it was his understanding that
12 Kapetan and Bell discussed the specifics to be included in the
13 statement later.

14      Paboojian declared that based on Kapetan's representations
15 that he did not need to refile the complaint, he instructed his
16 associate, Jason Bell, not to worry about refiling the complaint
17 and that Kapetan had waived any technicalities regarding the
18 premature filing.

19      In his declaration filed on November 21, 2007, Jason Bell,
20 an associate in Paboojian's firm, stated that he met with
21 Paboojian at the end of January 2007 to discuss the case, and
22 Paboojian informed him of a conversation he had just had with
23 Kapetan in which she told Paboojian that the complaint was filed
24 a few days prematurely but not to worry about filing another
25 complaint; she said that the prematurity was not a problem
26 because she would not require it to be refiled. Paboojian
27 instructed Bell to discuss with Kapetan the filing of the joint
28 scheduling conference statement, which Kapetan would prepare and

send over for additional input. Bell declared that in a conversation on or about February 1, 2007, Bell spoke with Kapetan about the statement, and she offered to prepare and send it as reflected in the previously mentioned e-mail of February 1, 2007. Bell declared that at no time during his conversation with Kapetan did she make any statements that differed from what Paboojian had reported.

Although Defendants object to Bell's declaration regarding the purported contents of his conversation with Paboojian on the grounds of hearsay, the Court considers the evidence for the non-hearsay purpose of the matter being stated to Bell, and not for its truth.

In her declaration filed on December 26, 2007, Kapetan stated that she handled the case for the government until August 2007, when she became a judge. She read the declarations submitted by Paboojian and Bell. She addressed only one specific conversation with Paboojian and one with Bell.

With respect to her conversation with Paboojian, she stated she did not have a substantive conversation with him on February 1, 2007, but rather believed her first conversation with Paboojian as to the specifics of the case was on February 8, 2007. Although they discussed factual issues about the case, she declared that Paboojian did not ask her if he had to file a new complaint; she did not tell him he did not have to refile his complaint; and the subject of the timeliness of his complaint simply did not come up in any conversation she had with Paboojian. She never received any correspondence from him regarding any alleged waiver of the premature filing. Further, in

15

her subsequent communications with Paboojian regarding the case, Paboojian never stated she had previously waived the issue of the premature filing of the complaint.

Her note of the conversation (Decl., Ex. 2) reflects a date of February 8, 2007, and entries regarding the accident, Plaintiff's injuries and employment, and her medical treatment; it stated that Kapetan would do the "SC" statement, and Paboojian would file a medical release. There are no entries regarding the prematurity of the complaint, subject-matter jurisdiction, or the statute of limitations.

In his supplemental declaration filed on January 3, 2008, Paboojian declares that when he received the motion to dismiss on October 25, 2007, while involved in an ongoing jury trial, he was surprised and shocked to see the motion because of his prior agreement with Kapetan. It appears that some words are missing from the declaration because the sense of the text on the first page is not continued on the second, and the text on the second page begins in the middle of a sentence. It appears that at some time on that day he spoke with Kapetan and told her of his surprise; Kapetan informed him that she did not remember their conversation one way or the other, and she "acknowledged that it was not in Joint Scheduling Conference and that was probably defense for me." Again, the sense of the text is unclear. He states that because she was caring for her father, she asked him to call back later, but he was not able to reach her until Friday, October 26, 2007, when she reiterated that she did not recall the conversation one way or another and that if she were to sign a declaration, that is what she would say. She also

1  advised Paboojian that someone from Texas had spoken with Bell

2  and informed him that the complaint was filed prematurely.

3  Paboojian has not spoken with Kapetan since that last

4  conversation. He dictated notes as to his conversations of

5  October 25 and 26, which were transcribed by his office on

6  November 7, 2007, and he produced a true copy of his notes

7  (Decl., Ex. A). The notes reflect conversations consistent with

8  those described in the declaration.

9      With respect to her conversation with Bell, Kapetan declared

10 that she briefly spoke with Bell on February 1, 2007, concerning

11 the upcoming joint scheduling conference. The subject of the

12 premature complaint did not come up in any conversation she had

13 with Mr. Bell; she never said anything to Mr. Bell about the

14 premature complaint or any issues connected thereto; after filing

15 the answer on February 26, 2007, which expressly raised the

16 affirmative defense of failure to exhaust administrative

17 remedies, she never received a call or correspondence from Bell

18 contending that she had previously waived the issue of the

19 premature filing of the complaint. Her note of the conversation

20 (Decl., Ex. 1) reflects a date of February 1, 2007, a reference

21 to the scheduling conference and its date, a listing of several

22 facts concerning Plaintiff's injuries, treatment, and employment,

23 and addresses for Bell. At the end of the notes in the middle of

24 the paper is an entry stating "T/C w/ Warren Paboojian 2/1/07,"

25 but nothing follows it on the page.

26      The declaration of Cindi Boukidis, a claims specialist at

27 the USFS, which is an agency of the United States Department of

28 Agriculture (USDA), was filed on December 26, 2007. Boukidis

17

states that in working on Plaintiff's claim, she spoke with Jason Bell on or around January 30, 2007, who identified himself as an attorney representing Plaintiff (she believed him to be named Jason "Beal" at the time) and asked for the contact information for the U.S. attorney who was going to handle the case because of an upcoming meet and confer deadline. Boukidis stated she explained to Bell that the tort claim had been submitted to the USDA office for general counsel for processing on January 26, 2007, and that she would try to have the U.S. attorney contact him once Boukidis learned the attorney's identity. She explained to Bell that it appeared that the lawsuit had been filed prematurely.

In his declaration filed on January 3, 2008, Bell states that he did not have a conversation with anyone in the USDA regarding Plaintiff's suit being filed prematurely; he would not have had this conversation with Defendants because Paboojian was the handling attorney, and Bell would not have had such substantive discussions with Defendants relating to the statute of limitations and/or timely claims procedures. Further, at no time did he ever receive correspondence from Cindi Boukidis at the USDA confirming the alleged conversation of January 30, 2007, confirming that it appeared that the lawsuit was filed prematurely. However, at the hearing on the motion, Mr. Bell appeared to acknowledge that a conversation occurred but that the matter of the premature filing of the complaint was not mentioned.

Boukidis filed an additional declaration on January 8, 2008, in which she appended her notes of the conversation of January

30, 2007, with Bell. (Decl., Ex. A.) Boukidis declared that Bell contacted her directly, and she took handwritten notes as was routine. Her notes reflect that she told him the action looked premature, and he stated he would not have filed but did so because they had been non-responsive.

The joint scheduling conference statement filed on February 13, 2007, did not indicate any issue of subject-matter jurisdiction or exhaustion of administrative remedies in the portion addressing undisputed and disputed legal issues. It referred to the disputed legal issues "[a]t this time," and listed only substantive issues concerning negligence. (Stmt. p. 2.) Paboojian declared in his initial declaration that he and Kapetan attended the conference on February 21, 2007, and Kapetan did not dispute jurisdiction or assert premature filing despite the fact that the standing order issued by the Court pursuant to Fed. Rule Civ. P. 16 required discussions of issues relating to jurisdiction. The Court notes that the order setting the conference, filed on December 18, 2006, stated in part that the joint scheduling report should include a summary of legal issues as to which there is no dispute, such as jurisdiction, etc., as well as a summary of the disputed legal issues. (Order, Ex. A.) Paboojian declared that at the conference, Kapetan acknowledged that no jurisdiction or other legal issues existed except those specifically raised in the statement, and those issues related only to issues of negligence, contributory negligence, and contribution of another party. No other legal issues were reserved in the order. The parties proceeded to engage in discovery, including written discovery and a vehicle inspection

1  in July 2007; Kapetan never mentioned an issue regarding
2  jurisdiction or retraction of any prior representations.

3      The answer, signed by Kapetan and dated February 15, 2007,
4  was filed on February 26, 2007, and it denies the complaint's
5  allegation regarding Plaintiff's alleged compliance with the FTCA
6  and asserts the affirmative defense of failure to exhaust
7  administrative remedies. (Ans. ¶ 5, and p. 3, second affirmative
8  defense.)

9      Paboojian declared initially that he reasonably relied on
10 Kapetan's assurances and representations, Plaintiff would suffer
11 substantial prejudice if the case were dismissed, and the
12 government would not be prejudiced because it has been able to
13 conduct substantial discovery.

14      C. <u>Analysis</u>

15      It is the Plaintiff's burden to establish jurisdiction and
16 to establish the equitable bases upon which Plaintiff seeks to
17 rely. After considering all the evidence, the Court concludes
18 that Plaintiff has not submitted evidence sufficient to meet her
19 burden in this case. The Court has considered all the evidence
20 submitted to it, and it is particularly swayed by the lack of any
21 written confirmation or documentation of the alleged statement by
22 the Defendants' counsel, and by the improbability of the
23 government's counsel's having purported to waive subject-matter
24 jurisdiction.

25      The Court finds that former Assistant United States Attorney
26 Kapetan did not represent to Plaintiff's counsel that it was not
27 necessary to file another complaint or action. The government did
28 not engage in any wrongful conduct. The answer specifically

1  denied Plaintiff's allegations that she had fully complied with

2  the FTCA by presenting a claim and that the claim had been

3  denied; although the government did not expressly state lack of

4  jurisdiction as a defense, it clearly denied the affirmative

5  allegations of the complaint concerning jurisdiction and

6  Plaintiff's allegations that she had complied with the

7  requirements of the FTCA. (Ans. ¶¶ 5, 6.) The government also

8  expressly stated that Plaintiff had failed to exhaust her

9  administrative remedies. (Id. at second affirmative defense.)

10 This information was sufficient to alert Plaintiff's counsel,

11 undisputedly an experienced and expert personal injury attorney,

12 to the defense.

13     Further, the denial of the claim that issued on February 13,

14 2007, expressly stated the requirement of filing an action within

15 six months of the final denial:

16     This is the final denial of the claim of Mrs. Waltz.
       The Department of Agriculture's regulations require
17     us to inform you that if your client is dissatisfied
       with this final action on her claim, she may file
18     suit against the United States of America in an
       appropriate United States District Court not later
19     than six (6) months from the date of mailing of
       this letter, which is the date shown above.
20
       I note that suit is pending against the United States
21     in the United States District Court, Eastern District
       of California, regarding the allegations set forth
22     in the claim. However, should the action presently
       in litigation be dismissed on any grounds, you are
23     reminded of the requirement that suit be filed in
       an appropriate United States District Court not
24     later than six (6) months after the date of the
       mailing of this letter, which is the date shown above.
25

26 (Memo. in Supp. of Mot., Ex. 2.) Considering the conversations

27 between Boukidis and Bell and between Kapetan and Paboojian, as

28 well as the denial of Plaintiff's allegations of compliance with

1  the FTCA that was set forth in Defendants' answer, this warning

2  could be construed as the third tip-off that a new complaint was

3  required to be filed. Yet none was filed until after the six

4  months had come and gone. Although the government did not

5  formally announce its intention to move to dismiss on the basis

6  of lack of jurisdiction, there was no trickery or

7  misrepresentation; the Court notes that the government may move

8  to dismiss on the basis of an absence of subject-matter

9  jurisdiction at any time.

10      Further, considering all the circumstances, the Court cannot

11  conclude that Plaintiff's counsel was diligent or that any

12  ignorance of the defense or its jurisdictional nature was

13  excusable. In this instance, Plaintiff's expert counsel knew the

14  facts concerning Plaintiff's filing of the claim and any response

15  thereto, and counsel is held to have known the legal effect of

16  the facts. The government was not obligated under the

17  circumstances to give advice to Plaintiff's counsel. See, Lehman,

18  154 F.3d at 1016-17.

19      Finally, Plaintiff was not prevented from filing a new

20  complaint within the pertinent six-month period after final

21  denial of her claim. She was represented by able attorneys at all

22  stages of the proceedings.

23      VII. Disposition

24      The Court has thus exercised its jurisdiction to determine

25  jurisdiction, and it concludes that it is without subject-matter

26  jurisdiction over the instant action due to Plaintiff's having

27  failed to comply with the FTCA before filing this action. The

28  motion to dismiss will be granted.

1   Because the Court decides the motion before it on the basis
2   of lack of subject matter jurisdiction, it is unnecessary to
3   consider the statute of limitations.

4   Further, because this Court lacks subject-matter
5   jurisdiction over this action, Plaintiff's motion for leave to
6   file an amended complaint is denied by operation of law.

7   Accordingly, it IS ORDERED that

8   1) The parties' requests for judicial notice (Docs. 25, 33)
9   ARE GRANTED; and

10   2) Defendants' motion to dismiss the action for lack of
11   subject-matter jurisdiction IS GRANTED; and

12   3) Plaintiff's motion for leave to file an amended complaint
13   IS DENIED by operation of law; and

14   4) The Clerk IS DIRECTED to enter judgment for Defendants
15   and against Plaintiff.

16   IT IS SO ORDERED.

17   **Dated:   January 16, 2008**              **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28